1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12  LORNA DELORES THOMPSON,              NO. CIV. 2:11-2261 WBS DAD

13            Plaintiff,
                                         MEMORANDUM AND ORDER RE:
14       v.                              MOTION TO DISMISS SECOND
                                         AMENDED COMPLAINT
15  RESIDENTIAL CREDIT SOLUTIONS,
    INC., a Delaware Corporation;
16  AMERICAN BROKERS CONDUIT, A
    DIVISION OF AMERICAN HOME
17  MORTGAGE INVESTMENT
    CORPORATION, a Maryland
18  Corporation; MERSCORP, INC.
    dba MORTGAGE ELECTRONIC
19  REGISTRATION SYSTEM, INC. AS
    NOMINEE FOR AMERICAN BROKERS
20  CONDUIT, AMERICAN HOME
    MORTGAGE SERVICING, INC., and
21  all person unknown, claiming
    any legal or equitable right,
22  title, estate, lien, or
    interest in the property,
23  described in the complaint
    adverse to Plaintiff's title,
24  and any cloud on Plaintiff's
    title thereto, and DOES 1-100,
25  inclusive,

26            Defendants.
    _____/
27

28

                                  1

----oo0oo----

Plaintiff Lorna Delores Thompson brings this action against defendants Residential Credit Solutions, Inc. ("RCS"), American Brokers Conduit ("ABC"), a division of American Home Mortgage Investment Corporation ("AHMIC"), Merscorp, Inc. ("Merscorp"), dba Mortgage Electronic Registration System, Inc. ("MERS") as nominee for American Brokers Conduit, and American Home Mortgage Servicing, Inc. ("AHMSI"), arising from defendants' allegedly wrongful conduct related to a residential loan.  RCS and Merscorp now move to dismiss the Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 17.)

I.   <u>Factual and Procedural Background</u>

In July of 2007, plaintiff purchased her residence at 2220 Cobblestone Avenue in Fairfield, California ("the property"), with a loan she obtained from American Brokers Conduit.  (SAC ¶ 1.)  On June 8, 2009, a Notice of Default was filed against the property after plaintiff had accrued a total default of at least $17,654.25.  (Req. for Judicial Notice ("RJN"), Ex. 3 (Docket No. 18).)  Beginning in June 2010, plaintiff was placed on a modified monthly trial program by AHMIC.  (SAC ¶ 18.)  On October 18, 2010, a Notice of Rescission of Notice of Default was recorded.  (RJN Ex. 4.)  After plaintiff's delinquency increased to $62,437.88, a second and operative Notice of Default was recorded on April 4, 2011.  (<u>Id.</u> Ex. 5.)  The Notice of Default included a declaration stating that:

> The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgage, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

(Id.)  On July 5, 2011, the National Default Servicing Corp. ("NDSC") was substituted as trustee under the Deed of Trust. (Id. Ex. 7.)  The same day, NDSC recorded a Notice of Trustee's Sale setting the foreclosure sale for July 26, 2011.  (Id. Ex. 8.)  The foreclosure sale took place on November 15, 2011, and a Trustee's Deed Upon Sale was recorded on November 28, 2011.  (Id. Ex. 9.)

On July 18, 2011, plaintiff filed her First Amended Complaint ("FAC") in the Superior Court of California, County of Solano.  On August 25, 2011, defendants removed the case to this court based on diversity of citizenship.  On November 22, 1011, the court granted RCS and Merscorp's motion to dismiss the FAC. (Docket No. 12.)  Plaintiff filed her SAC on November 28, 2011. (Docket No. 13.)  The SAC alleges claims against defendants for: (1) wrongful foreclosure under California Civil Code section 2923.5; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) anticipatory breach of contract; (5) unfair business practices; (6) wrongful foreclosure under California Civil Code section 2932.6; (7) negligent infliction of emotional distress; (8) quiet title; and (9) violations of the Racketeer Influenced and Corrupt

1  Organizations ("RICO") Act.[1]

2  II.   <u>Judicial Notice</u>

3         A court may take judicial notice of facts "not subject
4  to reasonable dispute" because they are either "(1) generally
5  known within the territorial jurisdiction of the trial court or
6  (2) capable of accurate and ready determination by resort to
7  sources whose accuracy cannot reasonably be questioned." Fed. R.
8  Evid. 201.   The court may take judicial notice of matters of
9  public record or of documents whose contents are alleged in the
10 complaint and whose authenticity is not questioned.  <u>Lee v. City</u>
11 <u>of L.A.</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).

12        Residential Credit Solutions and Merscorp have filed a
13 request for judicial notice in support of their motion to dismiss
14 which contains nine exhibits: (1) a copy of the Grant Deed,
15 recorded in Solano County on July 10, 2007; (2) a copy of the
16 Deed of Trust, recorded in Solano County on July 10, 2007; (3) a
17 copy of the Notice of Default and Election to Sell Under Deed of
18 Trust, recorded in Solano County on June 8, 2009; (4) a copy of
19 the Notice of Rescission, recorded in Solano County on October
20 18, 2010; (5) a copy of the Notice of Default and Election to
21 Sell Under Deed of Trust, recorded in Solano County on April 4,
22 2011; (6) a copy of the Corporation Assignment of Deed of Trust,
23 recorded in Solano County on May 3, 2011; (7) a copy of the
24 Substitution of Trustee, recorded in Solano County on July 5,
25 2011; (8) a copy of the Notice of Trustee's Sale, recorded in
26 Solano County on July 5, 2011; and (9) a copy of the Trustee's

27

28        [1]   Plaintiff raises claims four through nine for the first
   time in her SAC.

1   Deed Upon Sale, recorded in Solano County on November 28, 2011.

2            The court will take judicial notice of defendants'
3   exhibits as they are matters of public record whose accuracy
4   cannot be questioned.  <u>See Lee</u>, 250 F.3d at 689.

5            Plaintiff asks the court to take judicial notice of the
6   judicial opinion in <u>Javaheri v. J.P. Morgan Chase Bank, N.A.</u>,
7   CV10-08185, 2011 WL 97684 (C.D. Cal. Jan. 11, 2011).  The court
8   does not need to judicially notice the opinion to consider it.

9   III. <u>Discussion</u>

10           On a motion to dismiss, the court must accept the
11  allegations in the complaint as true and draw all reasonable
12  inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416
13  U.S. 232, 236 (1974), <u>overruled on other grounds by Davis v.</u>
14  <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322
15  (1972).  "To survive a motion to dismiss, a complaint must
16  contain sufficient factual matter, accepted as true, to 'state a
17  claim to relief that is plausible on its face.'"  <u>Ashcroft v.</u>
18  <u>Iqbal</u>, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting
19  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This
20  "plausibility standard," however, "asks for more than a sheer
21  possibility that a defendant has acted unlawfully," and "[w]here
22  a complaint pleads facts that are 'merely consistent with' a
23  defendant's liability, it 'stops short of the line between
24  possibility and plausibility of entitlement to relief.'"  <u>Id.</u>
25  (quoting <u>Twombly</u>, 550 U.S. at 556-57).

26       A.   <u>Wrongful Foreclosure Under California Civil Code</u>
27            <u>Section 2923.5</u>
28            Plaintiff contends that defendants failed to comply

5

1  with the communication requirements set forth in California Civil

2  Code section 2923.5.  Section 2923.5(a)(2) requires a "mortgagee,

3  beneficiary or authorized agent" to "contact the borrower in

4  person or by telephone in order to assess the borrower's

5  financial situation and explore options for the borrower to avoid

6  foreclosure."  Section 2923.5(b) requires a default notice to

7  include a declaration "from the mortgagee, beneficiary, or

8  authorized agent" of compliance with section 2923.5, including

9  attempt "with due diligence to contact the borrower as required

10  by this section."  Cal. Civ. Code § 2923.5.

11        "[T]he remedy for noncompliance [with section 2923.5]

12  is a simple postponement of the foreclosure sale, nothing more."

13  Mabry v. Superior Court, 185 Cal. App. 4th 208, 214 (4th Dist.

14  2010).  Since the foreclosure sale has already occurred, the

15  alleged section 2923.5 violation fails to satisfy a claim for

16  wrongful foreclosure.  See Geren v. Deutsche Bank Nat'l, No. CV F

17  11-0938 LJO GSA, 2011 WL 3568913, at *9 (E.D. Cal. Aug. 12,

18  2011).  Accordingly, the court will dismiss this claim.

19        B.    Breach of Contract and Anticipatory Breach of Contract

20             To state a claim for breach of contract under

21  California law, plaintiffs must allege (1) the existence of a

22  contract; (2) plaintiffs' performance or excuse for

23  nonperformance of the contract; (3) defendants' breach of the

24  contract; and (4) resulting damages.  Armstrong Petroleum Corp.

25  v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1390 (2004).

26  Plaintiff alleges that defendants were in breach of contract when

27

28

6

they violated the notice requirements in section 2923.5[2] and the
terms of the Modification Agreement.

Plaintiff continues to base her breach of contract
claim on defendants' alleged violation of section 2923.5.  Once
again, plaintiff fails to plead how she was damaged by
defendants' alleged breach other than being forced to incur
"costs and attorney fees."  (SAC ¶ 66.)  While section 2923.5
requires the lender to discuss options to prevent foreclosure, it
does not require that any loan modification take place.  See Vega
v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1113 (E.D.
Cal. 2009).  Plaintiff stated that she and defendants discussed
her options to prevent foreclosure.  (SAC ¶¶ 18-31.)   Plaintiff
therefore received all the benefits that she was entitled to
under section 2923.5 and suffered no damages as a result of
defendants' alleged violation of the notice requirements.[3]

In her SAC, plaintiff includes allegations for the
first time that defendants' breached the Modification Agreement.
"The general rule is that if an 'essential element' of a promise
is reserved for the future agreement of both parties, the promise
gives rise to no legal obligation until such future agreement is
made."  City of L.A. v. Super. Ct. of L.A. Cnty., 51 Cal. 2d 423,

---

[2]     The SAC also refers in passing to California Civil Code
section 2924.  (SAC ¶ 62.)  Section 2924 requires that a trustee
must notify an owner or borrower before a foreclosure sale may
proceeding.  Plaintiff has not pled in her SAC that a trustee
failed to notify her before the foreclosure sale, thus plaintiff
has failed to state a claim for violation of section 2924.

[3]     Given the obvious deficiencies in plaintiff's claim, it
is unnecessary to reach the question of whether plaintiff
adequately pled that a violation of section 2923.5 had occurred
as a predicate to her breach of contract claim.

1    433 (1959) (quoting Ablett v. Clauson, 43 Cal. 2d 280, 284

2    (1954)).  Based on this principle, a number of courts have

3    dismissed claims based on "agreements to agree."  See, e.g.,

4    Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1266

5    (C.D. Cal. 2010).  However, some courts have held that

6    "agreements to negotiate" are enforceable.  See, e.g., Copeland

7    v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1255-60 (2d

8    Dist. 2002).

9           Plaintiff's allegations that defendants breached their

10   obligations under the Modification Agreement are deficient for

11   two primary reasons.  First, plaintiff may be alleging an

12   unenforceable "agreement to agree" to a loan modification.  See

13   City of L.A., 51 Cal.2d at 433.  Second, even if the court

14   construes plaintiff's SAC as alleging an "agreement to negotiate"

15   a loan modification and holds that such agreements are

16   enforceable, plaintiff has only alleged in conclusory fashion

17   that the parties entered into such an agreement.  Plaintiff has

18   not provided nonconclusory factual content from which the court

19   can plausibly infer that the parties entered into an agreement to

20   negotiate.  See Twombly, 550 U.S. at 570.  While plaintiff has

21   detailed a series of interactions with defendants involving

22   plaintiff's loan modification application, (see SAC ¶ 63), "such

23   facts are only consistent with defendants' liability and do not

24   give rise to plausible entitlement to relief."  Iqbal, 129 S. Ct.

25   at 1949.  The court will therefore dismiss plaintiff's breach of

26   contract and anticipatory breach of contract claims.

27        C.   Implied Covenant of Good Faith and Fair Dealing

28             "Every contract imposes upon each party a duty of good

8

1  faith and fair dealing in its performance and its enforcement."
2  Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)
3  (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2
4  Cal. 4th 342, 371 (1992)).  "A typical formulation of the burden
5  imposed by the implied covenant of good faith and fair dealing is
6  'that neither party will do anything which will injure the right
7  of the other to receive the benefits of the agreement.'"  Andrews
8  v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005)
9  (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).
10 "The prerequisite for any action for breach of the implied
11 covenant of good faith and fair dealing is the existence of a
12 contractual relationship between the parties . . . ."  Smith v.
13 City & Cnty. of S.F., 225 Cal. App. 3d 38, 49 (1990).  Plaintiff
14 alleges that defendants violated the implied covenant of good
15 faith and fair dealing by failing to offer plaintiff a feasible
16 loan modification, failing to provide plaintiff with a response
17 to the Qualified Written Request ("QWR"), refusing to disclose
18 documents in violation of the Truth in Lending Act ("TILA"), and
19 refusing to provide accounting pursuant to the Fair Debt
20 Collection Practices Act.  (SAC ¶72.)

21         Generally, "[a]bsent 'special circumstances' a loan
22 transaction 'is at arms-length'" and no duties arise from the
23 loan transaction outside of those in the agreement.  Rangel v.
24 DHI Mortgage Co., Ltd., No. CV F 09-1035 LJO GSA, 2009 WL
25 2190210, at *5 (E.D. Cal. July 21, 2009) (quoting Oaks Mgmt.
26 Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006)).
27 Absent contrary authority or the pleading of special
28 circumstances, plaintiff cannot establish that RCS or Merscorp

owed plaintiff a duty of care.  <u>See</u> <u>Hardy v. Indymac Federal</u>
<u>Bank</u>, 263 F.R.D. 586, 593 (E.D. Cal. 2009).  Plaintiff has failed
to allege any facts constituting special circumstances that would
suggest that the transaction was not at arms length.  All that
plaintiff has added to her claim is a conclusory sentence stating
that defendants owed her a duty that they breached.  (SAC ¶ 76.)
Pleading a legal conclusion does not satisfy plaintiff's
obligation to plead special circumstances.  Plaintiff thus fails
to plead that RCS and Merscorp owed a duty to not cause plaintiff
harm in their capacities as loan servicer and nominal beneficiary
of the loan.  Additionally, as discussed above, plaintiff has
failed to allege nonconclusory factual content from which the
court could infer the existence of a modification agreement that
could provide the basis for additional duties owed by each party.
Accordingly, the court will dismiss this claim.

> D.   <u>Unfair Business Practices</u>

California's UCL prohibits "any unlawful, unfair or
fraudulent business act or practice . . . ."  Cal. Bus. & Prof.
Code § 17200.  This cause of action is generally derivative of
some other illegal conduct or fraud committed by a defendant.
<u>Khoury v. Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (2d
Dist. 1993).

"Under its 'unlawful' prong, 'the UCL borrows
violations of other laws . . . and makes those unlawful practices
actionable under the UCL.'"  <u>Berryman v. Merit Prop. Mgmt., Inc.</u>,
152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (quoting <u>Lazar v.</u>
<u>Hertz Corp.</u>, 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999)).
"Thus, a violation of another law is a predicate for stating a

1  cause of action under the UCL's unlawful prong." <u>Id.</u>  A

2  "fraudulent" business act or practice is one in which members of

3  the public are likely to be deceived. <u>Olsen v. Breeze, Inc.</u>, 48

4  Cal. App. 4th 608, 618 (3d Dist. 1996).  A business practice is

5  "unfair" when it "violates established public policy or if it is

6  immoral, unethical, oppressive or unscrupulous and causes injury

7  to consumers which outweighs its benefits." <u>McKell v. Wash.</u>

8  <u>Mut., Inc.</u>, 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006).

9  Plaintiff's UCL claim is based on defendants' violation of

10 California Civil Code section 2923.5.  As discussed above, the

11 court does not reach the question of whether defendants violated

12 section 2923.5 because there is no longer a remedy available to

13 plaintiff.

14         Even if plaintiff has sufficiently alleged a violation

15 of the UCL, standing to bring a UCL claim requires "a person who

16 has suffered injury in fact and has lost money or property <u>as a</u>

17 <u>result</u> of the unfair competition."  Cal. Bus. & Prof. Code

18 § 17204 (emphasis added).  To have standing, a plaintiff must

19 sufficiently allege that (1) he has "lost 'money or property'

20 sufficient to constitute an 'injury in fact' under Article III of

21 the Constitution," <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195,

22 1203-04 (9th Cir. 2010), and (2) there is a "causal connection"

23 between the defendant's alleged UCL violation and the plaintiff's

24 injury in fact.  <u>Id.</u> at 1204 (quoting <u>Hall v. Time Inc.</u>, 158 Cal.

25 App. 4th 847, 855 (4th Dist. 2008)).

26         Here, with respect to injury and causation, plaintiff's

27 UCL claims allege: "As a result of breach by Defendants, and each

28 of them, Plaintiff has suffered damages including costs and

11

1   attorney fees in an amount to be proven at trial." (SAC ¶ 102.)

2   Plaintiff fails to cite any authority establishing that

3   attorney's fees and costs incurred in bringing a UCL claim are

4   sufficient to confer standing. "Under Plaintiff's reasoning, a

5   private plaintiff bringing a UCL claim automatically would have

6   standing merely by filing suit." Cordon v. Wachovia Mortg., 776

7   F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).

8          If the court were to interpret plaintiff's alleged

9   injury as being the loss of her property, plaintiff would still

10  be faced with the possible loss of the property if defendants had

11  fully complied with California Civil Code section 2923.5. See

12  DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390, 2011 WL

13  311376, at *7 (N.D. Cal. Jan. 28, 2011) ("Without some factual

14  basis suggesting that Plaintiffs could have cured the default in

15  the fall of 2009, the Court cannot reasonably infer that Wells

16  Fargo's alleged misrepresentations [that it would complete a loan

17  modification agreement and that no foreclosure sale would occur

18  while the loan modification was pending] resulted in the loss of

19  Plaintiffs' home. Rather, the facts alleged suggest that

20  Plaintiffs lost their home because they became unable to keep up

21  with monthly payments and lacked the financial resources to cure

22  the default. Although the Court understands Plaintiffs'

23  frustrations with Wells Fargo's seemingly contradictory

24  statements and actions, it does not appear that this conduct

25  resulted in a loss of money or property."); Justo v. Indymac

26  Bancorp, No. SACV 09-1116, 2010 WL 623715, at *4 (C.D. Cal. Feb.

27  19, 2010) ("[P]laintiffs make no attempt to show a causal

28  connection between the alleged misrepresentation -- the promise

1   to modify loans -- and the alleged injury -- the sale of their

2   homes."). <u>But see</u> <u>Zivanic v. Wash. Mut. Bank, F.A.</u>, No. 10-737,

3   2010 WL 2354199, at *5 (N.D. Cal. June 9, 2010) (allowing a

4   violation of section 2923.5 to serve as a basis for plaintiff's

5   UCL claim, but not directly addressing causation).   Accordingly,

6   because plaintiff lacks standing under the UCL, the court will

7   grant defendants' motion to dismiss the UCL claims.

8        D.   <u>California Civil Code section 2932.5</u>[4]

9        California Civil Code section 2932.5 provides that:

10       Where a power to sell real property is given to a
         mortgagee, or other encumbrancer, in an instrument
11       intended to secure the payment of money, the power is
         part of the security and vests in any person who by
12       assignment becomes entitled to payment of the money
         secured by the instrument.   The power of sale may be
13       exercised by the assignee if the assignment is duly
         acknowledged and recorded.
14

15  Cal. Civ. Code § 2932.5.   Plaintiff alleges that RCS lacked

16  standing to pursue foreclosure because the assignment of the deed

17  of trust from MERS to RCS was not recorded pursuant to section

18  2932.5.   (SAC ¶¶ 108-09.)

19       Section 2932.5 "applies only to mortgages that give a

20  power of sale to the creditor, not to deeds of trust which grant

21  a power of sale to the trustee." <u>Roque v. Suntrust Mortg., Inc.</u>,

22  No. C-09-0040, 2010 WL 546896, at *3 (N.D. Cal. Feb. 10, 2010).

23  The distinction between trusts and mortgages has been clearly

24  established under California law since 1908, when the court in

25  _____

26       [4]   Plaintiff cites a violation of California Civil Code
    section 2932.6 in her Complaint.   This section governs the right
27  of financial institutions to repair property acquired through
    foreclosure.   <u>See</u> Cal. Civ. Code § 2932.6.   It appears that
28  plaintiff intended to reference section 2932.5, which governs the
    power of sale for an assignee, <u>id.</u> § 2932.5.

                                   13

1  <u>Stockwell v. Barnum</u>, 7 Cal. App. 413 (2d Dist. 1908), held that

2  the precursor to section 2932.5 did not apply to deeds of trust

3  because "a mortgage creates only a lien, with title to the real

4  property remaining in the borrower/mortgagee, whereas a deed of

5  trust passes title to the trustee with the power to transfer

6  marketable title to the purchaser." <u>Calvo v. HSBC Bank USA,</u>

7  <u>N.A.</u>, 199 Cal. App. 4th 118, 122 (2d Dist. 2011) (citing

8  <u>Stockwell</u>, 7 Cal. App. at 416). In California, deeds of trust

9  have largely replaced mortgages, "[t]hus, section 2932.5 . . .

10 became practically obsolete and [is] generally ignored by

11 borrowers, creditors, and the California courts." <u>Id.</u> at 125.

12      Here, plaintiff's loan is secured by a Deed of Trust

13 conveying power of sale to the trustee, (RJN Ex. 2), not a

14 mortgage whereby the power of sale rests with the creditor.

15 Accordingly, section 2932.5 is inapplicable and the court will

16 grant defendants' motion to dismiss this claim.

17      F.   <u>Negligent Infliction of Emotional Distress</u>

18      Negligent infliction of emotional distress ("NIED") is

19 a form of negligence to which the standard elements of duty,

20 breach, causation, and damages apply. <u>Hillblom v. County of</u>

21 <u>Fresno</u>, 539 F. Supp. 2d 1192, 1209 (E.D. Cal. 2008) (citing

22 <u>Huggins v. Longs Drug Stores Cal., Inc.</u>, 6 Cal. 4th 124, 129

23 (1993)). To assert an NIED claim, a plaintiff must suffer

24 "serious" emotional distress. <u>Tuttle v. Chase Ins. Life &</u>

25 <u>Annuity Co.</u>, No. 07-3637, 2007 WL 2790359, at *3 (N.D. Cal. Sept.

26 20, 2007) (citing <u>Burgess v. Superior Court</u>, 43 Cal. App. 4th

27 1064, 1073 (5th Dist. 1992)).

28      Under California law, NIED claims may be categorized as

"bystander" or "direct victim" claims based on the source of the duty owed by the defendant.  "Bystander" claims are typically based on a duty owed to the public in general, while "[d]irect victim" claims "arise[] from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff."  Huggins, 6 Cal. 4th at 129 (citations omitted); see Fluharty v. Fluharty, 59 Cal. App. 4th 484, 493 (3d Dist. 1997) ("As a direct victim, a party may recover strictly emotional distress damages, i.e., absent physical injury or impact, where a duty arising from a preexisting relationship is negligently breached." (citing Burgess, 43 Cal. App. 4th at 1074)).  Plaintiff appears to be bringing a direct victim claim.  As discussed above, plaintiff fails to plead that defendants negligently breached a duty arising from their preexisting relationship.  Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim for negligent infliction of emotional distress.

    G.   Quiet Title

         The purpose of a quiet title action is to establish one's title against adverse claims to real property.  California Code of Civil Procedure section 761.020 states that a claim to quiet title requires: (1) a verified complaint, (2) a description of the property, (3) the title for which a determination is sought, (4) the adverse claims to the title against which a determination is sought, (5) the date as of which the determination is sought, and (6) a prayer for the determination of the title.  Cal. Civ. Proc. Code § 761.020.

15

1    The tender rule applies to a quiet title action.

2  <u>Kozhayev v. America's Wholesale Lender</u>, No. CIV S-09-2841, 2010

3  WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010); <u>see also</u> <u>Shimpones v.</u>

4  <u>Stickney</u>, 219 Cal. 637, 649 (1934).  A "quiet title action is

5  doomed in the absence of Plaintiffs' tender of the full amount

6  owed."  <u>Gjurovich v. California</u>, No. 1:10-cv-01871, 2010 WL

7  4321604, at *8 (E.D. Cal. Oct. 26, 2010).  As with her FAC,

8  plaintiff has not alleged tender or the ability to tender in her

9  SAC.[5]  Accordingly, the court will grant defendants' motion to

10 dismiss the quiet title claim.

11    H.   RICO Violations

12    Plaintiff's ninth cause of action asserts that

13 defendants have violated RICO by committing violations of federal

14 law involving mortgage and mail fraud.  (SAC ¶¶ 130-39.)

15 Liability under the civil RICO statutes requires the conduct of

16 an enterprise through a pattern of racketeering activity.  <u>Miller</u>

17 <u>v. Yokohama Tire Corp.</u>, 358 F.3d 616, 620 (9th Cir. 2004).

18 Racketeering activity includes any act which is indictable under

19 certain provisions of Title 18 of the United States Code.  <u>See</u> 18

20 U.S.C. § 1961(1)(b).

21    To properly plead a RICO violation for civil damages, a

22 plaintiff must show that the defendants, through two or more acts

23 constituting a pattern, participated in an activity affecting

24 interstate commerce.  <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550,

25 557 (9th Cir. 2010).  The heightened pleading requirements of

26 _____

27    [5]    Plaintiff argues that it is premature to consider
   whether she has the ability to tender because tender is not
28 required to plead a rescission claim under TILA.  While plaintiff
   has mentioned TILA in passing, she has not pled any claims
   arising under TILA, nor has she pled a claim for rescission.

16

Rule 9(b) apply to civil RICO fraud claims.   <u>Mostowfi v. i2</u>
<u>Telecom Int'l, Inc.</u>, 269 F. App'x 621, 623 (9th Cir. 2008)
(citing <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th
Cir. 2004)).   In addition, Rule 9(b) "may apply to claims -- that
although lacking fraud as an element -- are 'grounded' or 'sound'
in fraud."   <u>Id.</u> (quoting <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097,
1103-04 (9th Cir. 2003)).   A claim is "grounded in fraud" when it
alleges a unified course of fraudulent conduct.   <u>Id.</u> at 624.
Rule 9(b) requires that when "alleging fraud or mistake, a party
must state with particularity the circumstances constituting
fraud or mistake."   Fed. R. Civ. P. 9(b).   The Ninth Circuit has
held that "to avoid dismissal for inadequacy under Rule 9(b),
[the] complaint would need to 'state the time, place, and
specific content of the false representations as well as the
identities of the parties to the misrepresentation.'"   <u>Edwards</u>,
356 F.3d at 1066 (quoting <u>Alan Neuman Prods., Inc. v. Albright</u>,
862 F.2d 1388, 1393 (9th Cir. 1989)).

        Plaintiff's claim is grounded in fraud, as plaintiff
alleges that defendants engaged in a pattern of racketeering
activity with the objective of perpetrating fraud.   (SAC ¶ 133.)
In her SAC, plaintiff makes only vague statements referring to
laws allegedly broken by defendants without actually explaining
how those laws were broken or pleading the "time, place, and
specific content of the false representations as well as the
identities of the parties to the misrepresentation[s]."   <u>Edwards</u>,
356 F.3d at 1066.   Plaintiff fails to state the circumstances
constituting fraud with particularity and has therefore failed to
meet the heightened pleading requirements of Rule 9(b).

1  Accordingly, the court will dismiss this claim.

2  III. <u>Sanctions</u>

3          Plaintiff filed her papers in opposition to the

4  defendants' motion to dismiss on January 20, 2012.  According to

5  Local Rule 230(c), opposition to the granting of a motion must be

6  filed and served not less than fourteen days preceding the

7  noticed hearing date.  As the hearing for this matter was set for

8  January 30, 2012, plaintiff filed her papers three days late.[6]

9          Local Rule 110 authorizes the court to impose sanctions

10  for "[f]ailure of counsel or of a party to comply with these

11  Rules."  Therefore, the court will sanction plaintiffs' counsel,

12  Gregory Harper, $100.00 payable to the Clerk of the Court within

13  ten days from the date of this Order, unless he shows good cause

14  for his failure to comply with the Local Rules.

15          IT IS THEREFORE ORDERED that defendants' motion to

16  dismiss be, and the same hereby is, GRANTED.

17          IT IS FURTHER ORDERED that within ten days of this

18  Order Gregory Harper shall either (1) pay sanctions of $100.00 to

19  the Clerk of the Court, or (2) submit a statement of good cause

20  explaining his failure to comply with Local Rule 230(c).

21          Plaintiff has twenty days from the date of this Order

22  to file an amended complaint, if she can do so consistent with

23

24          [6]      This is not the first time that counsel for the
   plaintiff in this action has filed his opposition late.  During
25  the briefing schedule for the previous motion to dismiss, counsel
   failed to timely file opposition papers.  After the clerk emailed
26  counsel to inquire as to whether he intended to oppose the
   motion, he emailed the court a copy of the opposition the day
27  after the filing deadline.  The clerk informed counsel that he
   would still need to file opposition papers with the court, but
28  counsel never did so.  In that instance, the clerk docketed the
   opposition to ensure a complete judicial record.

1 | this Order.

2 | DATED:   January 25, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

19